# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JAMES ALLEN, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION NO. 5:18-CV-145 (MTT) |
| OSMANY F. SANCHEZ, *et al.*, | ) |
| Defendants. | ) |

## ORDER

Defendants Osmany Sanchez, Caribe Trucking Company, LLC, and Starr Indemnity and Liability Company have moved for partial summary judgment on Plaintiffs James and Rachel Allen's negligent hiring, negligent retention, and punitive damages claims. Doc. 18. In response, the Allens moved for sanctions for the spoliation of evidence that they believe would support their punitive damages claim. Doc. 20. On June 18, 2019, the Court held a hearing on those motions. Doc. 26. For the following reasons, the Allens' motion for sanctions (Doc. 20) is **DENIED without prejudice**, and the Defendants' motion for partial summary judgment (Doc. 18) is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND[1]

On January 26, 2018, Caribe employee Sanchez was driving Caribe's tractor trailer on an interstate highway when his left front tire blew out. Doc. 20-2 at 10. James

---

[1] Unless stated otherwise, the facts are undisputed and are viewed in the light most favorable to the nonmoving party.

Allen was driving in the lane to the right of and slightly behind Sanchez. *Id.* Sanchez, in an effort to reach the shoulder of the road, hit James' vehicle. *Id.*

On March 28, 2018, James and his wife, Rachel, filed suit against Sanchez, Caribe, and Starr. Doc. 1-2. The Allens allege Sanchez was negligent in the operation of the tractor trailer and that he showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." *Id.* ¶¶ 9, 13. The Allens allege Caribe was negligent in hiring and retaining Sanchez and that Caribe is vicariously liable for Sanchez's actions. *Id.* ¶¶ 10, 11, 13.

On February 7 and 8, 2018, the Defendants received a spoliation letter from the Allens' counsel, asking the Defendants to preserve Sanchez's driver logbooks and annual inspection, daily inspection, and maintenance reports of his truck. Doc. 20-2 at 2. Throughout discovery, the Allens sought Sanchez's driver logbooks, pre- and post-trip inspection reports, and tire maintenance and replacement reports, but the Defendants failed to produce the requested documents. Docs. 20-3 ¶¶ 1, 2, 3, 4; 20-4 ¶¶ 1, 2, 3, 4; 20-5 ¶¶ 1, 2, 3, 4; 20-6 ¶¶ 1, 2, 3, 4; 20-7 ¶¶ 1, 2, 3, 4; 22-1 at 6:14-8:12. This failure is the basis of the Allens' spoliation claim. Doc. 20.

Caribe required Sanchez to keep a logbook and pre- and post-trip inspection reports and to give them to Caribe after each trip. Doc. 22-1 at 26:1-24, 28:6-29:16, 40:8-41:18. Caribe also required Sanchez to perform maintenance on his truck after every "7,000 or 10,000" miles driven. *Id.* at 30:3-31:3. This "maintenance" included a tire inspection that was more in-depth than the tire inspection performed during the pre- and post-trip inspections. *Id.* Like the logbooks and pre- and post-trip inspection reports, Caribe required Sanchez to turn over the maintenance reports upon

completion. Doc. 20 at 2-3; *see generally* Doc. 22-1. The only related documents that the Defendants produced during discovery were the Annual Inspection Report of Sanchez's truck performed by the Georgia Department of Transportation and the Georgia Department of Public Safety Driver Vehicle Examination Report that was completed after the accident.[2] Docs. 22-2; 22-3.

After the Allens moved for sanctions, the Defendants finally produced the logbooks, which only show the hours Sanchez worked during the ten days before the accident,[3] but still failed to produce the reports. Docs. 22-4. The Defendants contend in their brief they cannot locate the pre- and post-trip inspection and maintenance reports, but argue the Allens have all of the information contained in the reports through the information obtained through the DOT Annual Inspection Report, the DPS Driver Vehicle Examination Report, and the testimony of Caribe's 30(b)(6) representative, Arasay Acosta. Doc. 22 at 3, 7. For some reason or reasons, Caribe is no longer attempting to locate the reports. Acosta depo. at 18:15-19:6, 20:22-21:4

## II. MOTION FOR SANCTIONS

Federal courts have broad discretion to impose spoliation sanctions against litigants as part of their inherent power to manage their own affairs. *Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1377 (S.D. Ga. 2008). If it is found that evidence has been spoliated, the Court must then decide whether sanctions are warranted and if so, what sanctions to impose.

---

[2] The DOT inspection occurred nearly two months before the accident, and the post-accident DPS inspection occurred after the accident and does not mention anything regarding the tire that caused the accident. Docs. 22 at 7; 22-2; 22-3.

[3] The Allens' counsel stated at the June 18 hearing that he would not be seeking sanctions for the Defendants' late production of the driver logbooks. Doc. 26. Accordingly, only the Defendants' failure to produce the pre- and post-trip inspection and maintenance reports will be considered for sanctions.

## A. Whether Spoliation Occurred

"Spoliation is the destruction or significant alteration of evidence, or *the failure to preserve property for another's use as evidence* in pending or reasonably foreseeable litigation." *Griffin v. GMAC Commercial Fin., L.L.C.*, 2007 WL 521907, at *3 (N.D. Ga. 2007) (internal quotation marks and citation omitted) (emphasis added); *see Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). "Such conduct creates the presumption that the evidence would have been harmful to the spoliator." *Baxley v. Hakiel Indus., Inc.*, 282 Ga. 312, 313, 647 S.E.2d 29, 30 (2007).[4] As the parties seeking sanctions, the Allens have the burden of proving spoliation. *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1362 (M.D. Ga. 2012). To meet this burden, the Allens must prove: (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to their case. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011).

The Allens have met this burden. Sanchez was required by Caribe to conduct pre- and post-trip inspections and perform maintenance checks after every "7,000 or 10,000" miles driven, fill out a report, and turn over those reports to Caribe after each trip. Docs. 20 at 2-3; 22-1 at 27:11-28:11, 29:7-31:3, 40:8-41:18; Acosta depo. at 14:3-5, 15:17-16:15. Thus, it is clear that these reports existed at one time and that Caribe received a spoliation letter within two weeks after the accident, providing Caribe clear notice of the potential for litigation and of its duty to preserve all relevant evidence. Doc. 20-2. This evidence is crucial to the Allens' claim for punitive damages because those

---

[4] Federal law governs the imposition of sanctions in diversity-jurisdiction cases because "spoliation sanctions constitute an evidentiary matter," but courts may rely on applicable state law for "guidance" if there is a lack of specific federal precedent. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).

-4-

reports potentially show that Sanchez chose to drive his truck knowing the tire that caused the accident was "defectively maintained and/or inspected." Doc. 20 at 6. Under Georgia law, evidence of a truck driver ignoring safety concerns regarding his truck and continuing to drive is sufficient for a jury to award punitive damages. *Glenn McClendon Trucking Co., Inc. v. Williams*, 183 Ga. App. 508, 510, 359 S.E.2d 351, 354 (1987) (citations omitted). Nonetheless, Caribe has failed to preserve, locate, and produce these reports after multiple requests by the Allens. Docs. 20-3 ¶¶ 1, 2, 3, 4; 20-4 ¶¶ 1, 2, 3, 4; 20-5 ¶¶ 1, 2, 3, 4; 20-6 ¶¶ 1, 2, 3, 4; 20-7 ¶¶ 1, 2, 3, 4; 22-1 at 6:14-8:12; Acosta depo. at 18:15-25, 30:23-31:14. Accordingly, the Court finds that spoliation has, indeed, occurred.

## B. Whether Sanctions Are Warranted

When determining what sanctions to impose, five factors should be considered: (1) whether the movant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the alleged spoliator acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence is not excluded.[5] *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). Potential sanctions include: (1) dismissal of the case; (2) exclusion of expert testimony; and (3) an adverse inference jury instruction. *Id.* The Allens want an adverse inference instruction. Doc. 20. An adverse jury instruction may be given based on a "party's failure to preserve evidence *only when the absence of that evidence is predicated on bad faith.*" *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018) (citation omitted) (emphasis added). "Mere negligence in losing or destroying . . . records is not enough

---

[5] The fifth factor is not at issue in this case.

for an adverse inference[.]" *Bashir*, 119 F.3d at 931 (internal quotation marks and citations omitted).

The Defendants argue that (1) the Allens have not been prejudiced, and (2) even if they have, it can be cured through other evidence that has been produced. Their first argument, as previously discussed, is patently without merit. The Allens are, in fact, prejudiced as a result of Caribe's failure to produce the reports because the reports have practical and obvious importance. The reports could provide information that Sanchez knew the tire was unsafe, supporting the Allens' claim for punitive damages.

The Defendants' argument that the prejudice can be cured also fails. Specifically, the Defendants argue that the prejudice can be cured by the Allens' access to Sanchez's deposition testimony that the tires were in satisfactory condition during his pre-trip inspection; access to the pre-accident DOT inspections; and access to the post-accident DPS inspections. Doc. 22 at 9-10. It is hard to take seriously the argument that Sanchez's assurances that his tires were fine makes everything fine. Apart from Sanchez's obvious self-interest, documents "are more reliable than the deponents' memories [because] time, of course, erodes all human memory." *Brown*, 563 F. Supp. 2d at 1379 (internal quotation marks and citation omitted). The fact that the Defendants have produced the DOT and DPS inspection reports, which, again, according to them, duplicate the missing documents, also does not relieve the Defendants of their obligation to comply with the Allens' requests for production.[6] *Fudali v. Pivotal Corp.*, 2009 WL 10668516, at *7 (N.D. Ga. 2009); *see also Graff v. Baja Marine Corp.*, 310 F.

---

[6] Furthermore, the DOT inspection occurred nearly two months before the accident, and the post-accident DPS inspection does not mention anything regarding the tires, particularly the tire that caused the accident, because, as stated by the Defendants, "the remnants of the tire . . . were spread along the darkened interstate following the accident." Docs. 22 at 7; 22-2; 22-3.

App'x 298, 301 (11th Cir. 2009) (stating that the plaintiffs' argument that the defendants had the opportunity to conduct tests on a different portion of the subject that was not destroyed by the plaintiffs did not cure the prejudice suffered by the defendants).

In sum, the Allens have established factors one, two, and three.

### 1. Bad Faith

Factually, the question of whether Caribe acted in bad faith is not clear. Sanchez testified that he gave all pre- and post-trip inspection reports to Caribe after each trip, and that he gave all maintenance reports to Caribe after each maintenance inspection was performed. Doc. 22-1 at 26:1-24, 28:6-29:16, 30:3-31:3, 40:8-41:18. Caribe certainly knew that the reports needed to be preserved. *See* Docs. 20-1 at 61:15-22; 20-2. Acosta, Caribe's safety manager who was responsible for maintaining those reports after the accident occurred,[7] testified that it is Caribe's practice to put those reports in the drivers' files, but Sanchez's reports are now nowhere to be found. Acosta depo. at 7:11-13, 16:7-17; *see generally* Docs. 22; 26; *see also* Acosta depo. at 18:15-19:6, 20:22-21:4 (Caribe's 30(b)(6) representative stating that she has no knowledge of anyone at Caribe currently searching for the reports).

Guaranteeing that relevant evidence is not lost is part of a party's duty to preserve, and, as discussed, failing to preserve or produce evidence constitutes spoliation. *See Little v. McClure*, 2014 WL 3778963, at *3 (M.D. Ga. 2014). Not only were the reports relevant evidence, they were *the* critical pieces of evidence in this

---

[7] Carlos Placeres, not Acosta, was Caribe's safety manager at the time of the accident and was responsible for collecting the pre- and post-trip inspection reports and the maintenance reports. Acosta depo. at 11:25, 18:15-25. Placeres no longer works for Caribe, but Acosta claims Placeres was unable to find the reports before his departure. *Id.* at 19:16-21, 20:1-21:4. Since Placeres' departure, Caribe, according to Acosta, has made no effort to find the missing reports. *Id.* at 20:22-21:21:4.

case, and the Defendants had a strong motive to destroy—or "lose"—any damaging reports.[8]  See *Graff*, 310 F. App'x at 302.

The question then is whether the circumstances of the disappearance of the reports are sufficient to support an inference of bad faith.  Acceptance of the Defendants' argument would, in effect, render a party's duty to preserve and duty to produce relevant evidence toothless.  However, and notwithstanding that the Defendants alone have access to facts explaining the disappearance of the documents, the Court cannot conclude as a matter of law that bad faith was present.  Accordingly, the Allens' motion for sanctions is **DENIED without prejudice**.  Given that a question of fact remains as to bad faith, the jury will be instructed that if it finds that Caribe acted in bad faith, then the absence of the reports can give rise to a rebuttable presumption that it contained evidence harmful to the Defendants on the issue of whether Sanchez had knowledge of the faulty tire.

### III.  MOTION FOR PARTIAL SUMMARY JUDGMENT

**A.  Standard**

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'"  *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (emphasis in original) (quoting

---

[8] Although the Defendants' counsel suggested at the June 18 hearing that, as far as anyone knows, Caribe still has the reports, this seems far-fetched.  Allen certainly has no duty to search far and wide for evidence the Defendants have made unavailable.

*Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324).

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

**B.  Discussion**

    **1.  Negligent Hiring and Negligent Retention**

The Defendants move for partial summary judgment on the Allens' negligent hiring and retention claims against Caribe.  Doc. 18-1.  The Allens concede to the dismissal of those claims.  Doc. 19 at 1.  Accordingly, the Defendants' motion for partial summary judgment regarding those claims is **GRANTED**, and the negligent hiring and retention claims are **DISMISSED with prejudice**.

    **2.  Punitive Damages**

The Defendants also move for partial summary judgment on the Allens' claims for punitive damages.  Doc. 18-1 at 9.  "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's

-9-

actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1.  "Negligence, even if gross, will not alone authorize the recovery of punitive damages; there must be circumstances of aggravation and outrage."  *Mastec N. Am., Inc. v. Wilson*, 325 Ga. App. 863, 866, 755 S.E.2d 257, 259 (2014) (internal quotation marks and citations omitted).  "At summary judgment, the question is whether [the plaintiff] produced evidence from which a jury could infer that [the defendant's] actions showed a conscious indifference to the consequences as alleged in the complaint."  *Id.* at 866, 755 S.E.2d at 259-60.  Evidence of a driver driving his truck despite safety concerns warrants a jury to award punitive damages.  *Glenn McClendon Trucking Co.*, 183 Ga. App. at 510, 359 S.E.2d at 354 (upholding a jury verdict awarding punitive damages to a plaintiff who was injured by a truck's wheels when the truck driver knew that the wheels were not operating properly) (citations omitted).

The Defendants contend that "Sanchez's truck sustained a severe tire failure that resulted in his vehicle coming to a controlled stop," that this was Sanchez's "only option to remain in control of the truck," and—without citing any law—punitive damages are not warranted.  Doc. 18-1 at 9.  In response, the Allens argue that the Defendants' failure to produce "any documentation pertaining to the inspection or maintenance of the tire that failed" should result in the Court giving an adverse inference jury instruction to cure the failure, creating a genuine dispute of material fact.  Docs. 19 at 2; 20.  As discussed, a question of fact regarding whether the reports were lost or destroyed in bad faith remains.  If the jury finds bad faith, then the jury may infer that the reports Caribe failed to produce contain evidence that Sanchez knew the tire was defective.  In short, a

question of fact regarding the Allens' punitive damages claim remains.  Accordingly, the Defendants' motion for partial summary judgment regarding the Allens' punitive damages claim is **DENIED**.

## IV.  CONCLUSION

For the reasons discussed above, the Allens' motion for sanctions (Doc. 20) is **DENIED without prejudice**, and the question of bad faith will be decided by the jury.  If the jury finds bad faith, a permissive adverse jury instruction will be given.  The Defendants' motion for partial summary judgment (Doc. 18) is **GRANTED in part** and **DENIED in part**.  The Plaintiffs' negligent hiring and negligent retention claims are **DISMISSED with prejudice**, and the Allens' claim for punitive damages may proceed.

**SO ORDERED,** this 11th day of July, 2019.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL
UNITED STATES DISTRICT COURT